**FOR PUBLICATION**

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 24-13266

_____

In re: THE RENCO GROUP INC. AND THE DOE RUN
RESOURCES CORPORATION.

_____

THE RENCO GROUP INC. AND THE DOE RUN RESOURCES
CORPORATION,

*Appellee,*

*versus*

NAPOLI SHKOLNIK PLLC,
HALPERN SANTOS & PINKERT, PA,

*Intervenor Plaintiffs-Appellants,*

VICTOR CAREAGA,

*Respondent,*

RODRIGUEZ TRAMONT & NUNEZ, PA,

*Intervenor-Appellant.*

_____

Appeals from the United States District Court
for the Southern District of Florida
D.C. Docket No. 1:22-cv-21115-JAL

_____

Before MARCUS and WILSON, Circuit Judges, and JONES,[*] District Judge.

MARCUS, Circuit Judge:

This matter arises out of an acrimonious discovery dispute between companies involved in the mining and production of heavy metals in the Republic of Peru and three law firms (the Appellants in this case) representing plaintiffs who claimed they were harmed by the conduct of those companies. The companies are The Renco Group Inc. and its subsidiary, The Doe Run Resources Corporation (collectively, "Renco"); the law firms are Halpern, LLC ("Halpern"), and jointly, Rodriguez Tramont & Nuñez, P.A. and Napoli Shkolnik, PLLC ("Rodriguez-Napoli").

Renco filed an *ex parte* application pursuant to 28 U.S.C. § 1782 in the Southern District of Florida, seeking an order to take discovery from an attorney, Victor Careaga, who previously worked at Halpern and Rodriguez-Napoli. Renco sought the discovery for use in an ongoing criminal investigation in Peru, which

_____

[*] Honorable Steve C. Jones, United States District Judge for the Northern District of Georgia, sitting by designation.

it had initiated, alleging that Careaga engaged in the illegal falsification of records when he recruited Peruvian clients to join in personal injury litigation against Renco.

Halpern and Rodriguez-Napoli intervened in the § 1782 action and moved for protective orders, asserting attorney-client privilege and work product protection over the discovery Renco sought from Careaga. The district court denied the law firms' motions, finding that their assertions of attorney-client privilege and work product protection had not been sufficiently established. The law firms timely appealed the matter to our Court.

At oral argument, Rodriguez-Napoli moved *ore tenus* for voluntary dismissal under Federal Rule of Appellate Procedure 42(b)(2). Without objection from any party, we granted the motion. Thus, only Halpern's appeal remains in this Court.

After thorough review, and with the benefit of oral argument, we are satisfied the district court did not abuse its considerable discretion in denying Halpern's motion for protective order. We affirm.

## I.

We recount the winding and bitter history between the parties, which extends far beyond the underlying § 1782 matter both temporally and geographically to better understand the instant dispute. Between 1997 and 2009, Renco operated a metallurgic smelter and refinery in La Oroya, Peru, a remote city in the Peruvian Andes. In 2011, nearly 1,400 Peruvian plaintiffs represented by Halpern filed suit in the Eastern District of Missouri alleging bodily

injury arising out of chronic exposure to toxins emitted from Renco's La Oroya facility. *A.O.A. v. Rennert* (*Reid*), No. 4:11-cv-44-CDP (E.D. Mo.). The *Reid* matter remains pending in the Eastern District of Missouri. In 2015, approximately 2,000 additional Peruvian plaintiffs represented by Rodriguez-Napoli sued in the Eastern District of Missouri asserting substantially the same claims. *J.Y.C.C. v. DRRC* (*Collins*), No. 15-cv-01704-RWS (E.D. Mo.). The *Collins* matter also remains pending in the Eastern District of Missouri.

Victor Careaga, formerly an attorney at Halpern, served as co-counsel for the *Reid* plaintiffs between 2006 and 2013. Since Careaga was disbarred from practicing law in Florida in 2013, he has continued to work at the Rodriguez-Napoli law firms as a paralegal and consultant assigned to the *Collins* matter. Careaga swore in an affidavit that he "develop[ed] the strategy and framework for identifying and communicating with prospective Peruvian clients," and regularly travelled to La Oroya to recruit plaintiffs. But Renco claims that Careaga acted illegally in his recruitment efforts, and on December 21, 2020, it filed a formal criminal complaint in the Provincial Prosecutor's Office for Organized Crimes in the Republic of Peru. The complaint alleged Careaga engaged in the fraudulent creation and falsification of numerous documents and "various illegal acts" in furtherance of the *Reid* and *Collins* cases.

Before commencing the § 1782 action in southern Florida, Renco sought broad discovery in the *Collins* matter in the Eastern District of Missouri to sustain its claims of fraud. The district court denied Renco's discovery requests regarding any active plaintiffs

involved in the *Collins* lawsuit.  Less than three weeks later, Renco filed this *ex parte* application under § 1782 in the Southern District of Florida, again seeking broad discovery to assist the Peruvian criminal investigation.  The district court granted the application, prompting the issuance of a subpoena to Careaga, who, acting *pro se*, opposed production on privilege grounds.  The discovery dispute was referred to a magistrate judge.

Rodriguez-Napoli then sought to enjoin the underlying § 1782 action in the Eastern District of Missouri pursuant to the All Writs Act, 28 U.S.C. § 1651(a).  It claimed that Renco had improperly sought to circumvent the Missouri district court's discovery rulings by applying for § 1782 relief in the Southern District of Florida.  After a hearing, the district court denied the application to enjoin the § 1782 action, but expressed concern that Renco had used a § 1782 proceeding in another district court, in another circuit to undermine its discovery rulings.

The Rodriguez-Napoli and Halpern law firms then sought to intervene in the § 1782 action in the Southern District of Florida seeking protective orders, claiming attorney-client privilege and work product protection.  The magistrate judge allowed Rodriguez-Napoli to intervene only to assert work product protection, conditioning any claim of attorney-client privilege on the submission of sworn client affidavits or declarations, which Rodriguez-Napoli failed to provide.  While Halpern's motion to intervene was pending, the magistrate judge ordered Rodriguez-Napoli and

Careaga to submit privilege logs pursuant to the Southern District of Florida's Local Rules.

With Halpern's assistance, Careaga created and submitted a log (the "Careaga Log"), listing thirty entries he asserted were entitled to attorney-client privilege and work product protection. Careaga also submitted an affidavit (the "Careaga Affidavit") attesting that during his investigation in 2006 he "came to the realization that *everything* [he] would do could be in anticipation of litigation." Rodriguez-Napoli separately submitted two privilege logs. At a hearing regarding the sufficiency of the three privilege logs, the magistrate judge explained that "the almost tortured complexity in which the privilege logs have been produced here . . . does not in any way enable me to make privilege rulings." The magistrate judge nevertheless declined to issue any formal ruling without full briefing on the pending motion for protective order.

The magistrate judge allowed Halpern to intervene to assert attorney-client privilege and work product protection. Halpern moved for a protective order and, despite the magistrate judge's warnings at the hearing, resubmitted the same Careaga Log. Halpern also submitted an affidavit from its principal attorney, Jay Halpern, attesting in broad terms that he had reviewed the documents in the Careaga Log and found that they contained information protected by work product and attorney-client privilege. Rodriguez-Napoli renewed its motion for protective order.

The magistrate judge denied the motions for protective orders, concluding that the law firms had not established, by a preponderance of the evidence, any privileged or protected documents. As for Halpern's motion, the court concluded the Careaga Log failed to properly support an assertion of attorney-client privilege or work product protection because the Log impermissibly lumped together numerous documents, and included undated entries, typographical errors, and other deficiencies. The court also noted that twelve of thirty entries asserted work product protection over third-party travel receipts and expense reports, which it determined were not attorney work product. Finally, the magistrate judge denied Rogriguez-Napoli's motion for similar reasons. The law firms filed respective appeals to the district judge, who affirmed.

After the law firms timely appealed to our Court, the parties submitted numerous motions and filings, which we recount only as relevant to Halpern's appeal. The law firms first moved, unsuccessfully, in district court to stay all proceedings pending the resolution of this appeal. The law firms then filed emergency motions in this Court to stay the district court proceedings. We denied those too. The § 1782 action therefore proceeded in the Southern District of Florida, and Careaga produced the contested documents to Renco.

Rodriguez-Napoli then moved in the Eastern District of Missouri for sanctions, including the disqualification of Renco's counsel in the *Collins* matter. The law firms claimed that Renco had

violated the district court's discovery orders by litigating the § 1782 action in Florida. The district court held the motion in abeyance but expressed concern that Renco had misquoted and misrepresented its orders in multiple fora and abused the federal judicial process. The district court warned the parties that any violation of its discovery orders or any attempt to circumvent the law firms' efforts to assert attorney-client privilege and work product protection would "be met with sanctions."

Renco then filed an "expedited" motion to voluntarily dismiss its § 1782 action in the Southern District of Florida. The district court denied the motion for want of jurisdiction. Renco also moved our Court to continue oral argument. We denied that application too. Renco moved us to waive oral argument, claiming that the district court's order in the Eastern District of Missouri prevented them from making oral argument in our Court. We again denied that application.[1]

On the eve of oral argument, Rodriguez-Napoli filed a "suggestion of mootness." The law firm represented that Renco has committed to the destruction of all contested documents Careaga produced, albeit at some unspecified time. Rodriguez-Napoli asserted that we could no longer grant any additional relief beyond

---

[1] At oral argument, Renco's counsel claimed he was prohibited from offering any substantive argument in our Court. Counsel explained, however, that Renco had not withdrawn its responsive brief advocating the affirmance of the district court's judgment in the instant § 1782 action. We offer no opinion about counsel's claim; we rely on Renco's brief, which counsel confirmed detailed Renco's position about the matter on appeal.

what had been agreed upon. At oral argument, Rodriguez-Napoli clarified that its suggestion of mootness really stemmed from the desire to abandon its appeal. Thereafter, Rodriguez-Napoli moved *ore tenus* for the voluntary dismissal of its appeal pursuant to Federal Rule of Appellate Procedure 42(b)(2). The other parties interposed no objection, we granted the motion and dismissed Rodriguez-Napoli's appeal. *See In re Renco Grp. Inc.*, No. 24-13266, 2025 WL 3633854 (11th Cir. Dec. 15, 2025).

Thus, only Intervenor Halpern's appeal remains pending in this Court. Both Halpern and Renco agreed that Halpern's appeal is not moot. The Halpern law firm maintains that the district court abused its discretion in denying the motion for protective order, and confirmed at oral argument that it seeks a ruling on the merits.

## II.

Before proceeding to the merits of Halpern's appeal, we are required to consider whether we still have appellate jurisdiction. *United States v. Lopez*, 562 F.3d 1309, 1311 (11th Cir. 2009). We do so because Rodriguez-Napoli has suggested the appeal was mooted by Renco's representation that it intends to destroy the contested documents produced by Careaga.[2] We are a court of limited jurisdiction, and we are always required to examine whether we have jurisdiction to entertain an appeal. *See Kelly v. Harris*, 331 F.3d 817, 819 (11th Cir. 2003) ("[F]ederal courts always have an obligation to

---

[2] At no point did Rodriguez-Napoli, or any other party to the instant appeal, file a motion to dismiss this appeal for mootness.

examine *sua sponte* their jurisdiction before reaching the merits of any claim." (citing *Region 8 Forest Serv. Timber Purchasers Council v. Alcock*, 993 F.2d 800, 807 n.9 (11th Cir. 1993))).

At oral argument, Renco and Halpern agreed that the appeals were not moot. After thorough review, we are satisfied that Halpern's appeal is not moot because we could render a judgment that would affect the legal relationship between the parties either by ordering the return or destruction of the contested materials, or by enjoining any future use of the information contained in those documents.

It is well settled that an appeal becomes moot "when it no longer presents a live controversy with respect to which the court can give meaningful relief." *Sheely v. MRI Radiology Network, P.A.*, 505 F.3d 1173, 1183 (11th Cir. 2007) (quoting *Toriano v. Supervisor of Elections*, 382 F.3d 1276, 1281–82 (11th Cir. 2004)). In analogous cases involving contested documents which have been disgorged, we have effected meaningful relief by ordering a party to return or destroy the divulged documents. *See, e.g.*, *Rothe v. Aballí*, No. 20-12543, 2021 WL 4429814, at *2 (11th Cir. Sep. 27, 2021) (per curiam) ("We . . . find that the appeal is not moot because, inter alia, the return of private documents, like the documents requested by Dr. Rothe, would provide some meaningful relief." (first citing *Church of Scientology of Cal. v. United States*, 506 U.S. 9, 12–13 (1992); then citing *In re Grand Jury Proceedings*, 142 F.3d 1416, 1422 (11th Cir. 1998))); *United States v. Fla. Azalea Specialists*, 19 F.3d 620, 622 (11th Cir. 1994).

24-13266               Opinion of the Court                    11

Rodriguez-Napoli argues, nevertheless, that Renco's proffered intention to destroy the contested documents at some future point affords sufficient relief foreclosing our ability to offer anything further. This claim places undue weight on Renco's voluntary assurance. Where an offending party represents that it has voluntarily ceased its offensive conduct, we require "more than a private party's assertion that its challenged conduct will not recur" to render the matter moot. *United States v. Askins & Miller Orthopaedics, P.A.*, 924 F.3d 1348, 1355–56 (11th Cir. 2019) (citing *Sheely*, 505 F.3d at 1184). On this record, it is not clear whether the contested documents have been destroyed, or when the destruction will occur. Nor is Renco bound in any formal way to make good on its assurance.

Moreover, even if Renco were to destroy the documents, we could offer Halpern meaningful relief by enjoining the use of the information contained within those documents. *See, e.g., F.T.C. v. Gibson Prods. of San Antonio, Inc.*, 569 F.2d 900, 903 (5th Cir. 1978) (finding appeal was not moot because a favorable outcome could effect both the return of contested documents and the limitation of their use in future hearings (first citing *Atl. Richfield v. FTC*, 546 F.2d 646, 650 (5th Cir. 1977); then citing *FTC v. Browning*, 435 F.2d 96, 97 n.1 (D.C. Cir. 1970))).[3]

---

[3] In *Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions handed down by the former Fifth Circuit before October 1, 1981. *Id.* at 1209.

In short, we are satisfied that Halpern's appeal is not moot because a decision from this Court could affect the legal relationship between the parties.

## III.

We review a district court's denial of a protective order only for abuse of discretion. *McCarthy v. Barnett Bank of Polk Cnty.*, 876 F.2d 89, 91 (11th Cir. 1989). A district court would abuse its discretion "if it applie[d] an incorrect legal standard, follow[ed] improper procedures in making the determination, or ma[de] findings of fact that are clearly erroneous." *Chic. Trib. Co. v. Bridgestone/Firestone, Inc.*, 263 F.3d 1304, 1309 (11th Cir. 2001) (per curiam) (citing *Mincey v. Head*, 206 F.3d 1106, 1137 n.69 (11th Cir. 2000)).

We apply the same abuse of discretion standard when reviewing a district court's ordinary discovery rulings, including decisions related to claims of privilege and decisions arising out of § 1782 discovery requests. *Application of Consorcio Ecuatoriano de Telecomunicaciones S.A. v. JAS Forwarding (USA), Inc.*, 747 F.3d 1262, 1268 (11th Cir. 2014). "Discovery orders should not be overturned 'unless the district court has abused its discretion and such abuse has resulted in substantial harm to the party seeking relief.'" *United Kingdom v. United States*, 238 F.3d 1312, 1319 (11th Cir. 2001) (quoting *Cox v. Adm'r, U.S. Steel & Carnegie*, 17 F.3d 1386, 1413 (11th Cir. 1994)).

Halpern's argument breaks down into two pieces: first, the district court erred in concluding the evidential foundation was in-

sufficient to establish either attorney-client privilege or work product protection; and, second, the district court erred by failing to take additional steps to ensure Halpern's assertions of privilege and protection were not meritorious.  Neither is persuasive.

## A.

We begin with Halpern's claim that the district court erred in determining that the evidence failed to establish attorney-client privilege or work product protection.

Attorney-client privilege attaches "to confidential communications between an attorney and client for the purposes of securing legal advice or assistance." *Drummond Co., Inc. v. Conrad & Scherer, LLP*, 885 F.3d 1324, 1334 (11th Cir. 2018) (citing *In re Grand Jury Investigation*, 842 F.2d 1223, 1224 (11th Cir. 1987)).  "The attorney-client privilege 'belongs solely to the client,'" and only the client can waive the privilege, "either expressly or by implication." *Cox*, 17 F.3d at 1417 (quoting *In re Von Bulow*, 828 F.2d 94, 100, 101 (2d Cir. 1987)).  The attorney work product doctrine affords broader protection, "extend[ing] to material obtained or prepared by counsel in the course of their legal duties provided that the work was done with an eye toward litigation." *Drummond*, 885 F.3d at 1334–35 (first citing FED. R CIV. P. 26(b)(3)(A); then citing *Cox*, 17 F.3d at 1421–22).

While these protections are well established, a claim of attorney-client privilege or work product is not self-executing.  The Federal Rules of Civil Procedure require a party seeking to "with-

hold[] information otherwise discoverable by claiming that the information is . . . subject to protection" to (1) "expressly make the claim," and (2) describe the nature of the items not produced or disclosed in a manner that will enable other parties to assess the claim. FED. R. CIV. P. 26(b)(5)(A)(i)–(ii). In this Circuit we require a party seeking to withhold information on the basis of a privilege to support its claims "on a document-by-document basis." *In re Grand Jury Subpoena*, 831 F.2d 225, 227 (11th Cir. 1987); *see also Drummond Co., Inc. v. Terrance P. Collingsworth, Conrad & Scherer, LLP*, 816 F.3d 1319, 1327 (11th Cir. 2016); *Johnson v. Gross*, 611 F. App'x 544, 547 (11th Cir. 2015) (per curiam). "Blanket assertions of privilege before a district court are usually unacceptable. . . . Instead, [an attorney] must present himself with his records for questioning, and as to . . . *each* record elect to raise or not to raise the defense." *In re Grand Jury Subpoena*, 831 F.2d at 227 (quoting *United States v. Davis*, 636 F.2d 1028, 1044 n.20 (5th Cir. Unit A Feb. 1981)). In addition, the moving party bears the burden of establishing that the privilege applies by a preponderance of the evidence. *In re Grand Jury Proceedings in Matter of Freeman*, 708 F.2d 1571, 1575 (11th Cir. 1983) (per curiam) (first citing *United States v. Kelly*, 569 F.2d 928, 938 (5th Cir. 1978); then citing *United States v. Ponder*, 475 F.2d 37, 39 (5th Cir. 1973) (per curiam)).

The essential questions then boil down to whether Halpern has presented sufficient evidence to support attorney-client privilege or work product protection by a preponderance of the evidence.

The magistrate judge offered several independent reasons for denying Halpern's motion for protective order. First, Halpern improperly lumped numerous documents together, offering only a blanket assertion of privilege or protection. Again, the law in this Circuit requires a party asserting privilege or protection to do so on a document-by-document basis. While some entries in the Careaga Log appear to be single documents, several are compilations or categories of documents that are hundreds of pages long. Thus, for example, the entry titled FILE 030 is 129 pages and described broadly as "[e]xpense receipts, blank attorney drafted client forms, attorney correspondence and notes regarding case expenses." This grouping of documents violated our caselaw and prevented the court from conducting a meaningful review of Halpern's claims of attorney-client privilege and work product protection.

In the second place, despite the improper blanket assertions of privilege and protection, the magistrate judge carefully parsed the Careaga Log to the extent reasonably possible, discerning multiple undated entries, typographical errors, and vague descriptions that further impeded its ability to evaluate Halpern's motion. At least six entries out of the thirty offered are undated and one entry, FILE 022, remarkably is dated June 29, 1905. The Careaga Log also included entries with dates spanning several years. Moreover, each of the Careaga Log's thirty entries were offered only at the highest order of abstraction: "Objection based on work product and attorney/client privileges: Communications between counsel of record

regarding clients and litigation against Doe Run and Renco; Attorney Work Product." The magistrate judge explained that these errors "frustrate[d] the Court's ability to understand the context of their creation," and that the supporting affidavits similarly offered no explanation or clarity.

Halpern says that the district court was required to look past these obvious deficiencies. The argument misapprehends Halpern's evidentiary burden and instead attempts to place the burden to search and explain on the district court. But the law does not require a district court to parse deficient privilege logs in the hunt for a possible claim of privilege or protection. *See Dorf & Stanton Commc'ns, Inc. v. Molson Breweries*, 100 F.3d 919, 923 (Fed. Cir. 1996) (holding that failing "to provide a complete privilege log demonstrating sufficient grounds for taking the privilege" waives the privilege (quoting *John Labatt Ltd. V. Molson Breweries*, Nos. 93-75004, 94-71540, 1995 WL 23603, at *1 (S.D.N.Y. Jan. 20, 1995))); *United States v. Constr. Prods. Rsch., Inc.*, 73 F.3d 464, 473 (2d Cir. 1996).

The long and short of it is that the district court acted well within its discretion in concluding that Halpern's deficient Careaga Log failed to substantiate its claims of privilege and protection, and the court was not obliged to conduct any further analysis or overlook the Log's deficiencies.

Despite these considerable deficiencies, the magistrate judge engaged in an individualized analysis of at least twelve entries

found in the Careaga Log, which asserted that expense reports, receipts, and reimbursement checks were attorney work product. The court explained, however, that these documents -- which were "generated by unidentified third-party vendors" and described client recruitment activities -- were ordinary business records and therefore not protected by the work product doctrine.[4]  *Cf. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Murray Sheet Metal Co.*, 967 F.2d 980, 984 (4th Cir. 1992) (explaining that "litigation is an ever-present possibility in American life," and often "events are documented with the general possibility of litigation in mind," yet the possibility of litigation alone does not cloak those documents with work product protection (first quoting *Binks Mfg. Co. v. Nat'l Presto Indus., Inc.*, 709 F.2d 1109, 1118 (7th Cir. 1983), then citing *Janicker v. George Washington Univ.*, 94 F.R.D. 648, 650 (D.D.C. 1982))); *see also United States v. Adlman*, 134 F.3d 1194, 1202 (2d Cir. 1998) (holding that work product protection does not extend to "documents . . . that would have been created in essentially similar form irrespective of the litigation").  Although Halpern correctly observes that work product protection may extend to third-party materials, *see United States v. Nobles*, 422 U.S. 225, 238–39 (1975), this protection would apply only when the "primary motivating purpose" of the document is to aid in possible litigation, *Davis*, 636 F.2d at 1040.

---

[4] The entries the court found were not protected under work product protection are FILE 002, 003, 004, 005, 006, 022, 012, 021, 023, 028, 029, and 030.

Nothing in this record suggests that these checks, expense reports, and third-party receipts were entitled to work product protection. Halpern points to no evidence in the supporting affidavits or Careaga Log showing these documents were created for the primary purpose of furthering the *Reid* litigation. Rather, the record suggests that many of these documents were generated by unrelated third-party businesses to document their own ordinary business transactions with Careaga. Similarly, the expense reports and reimbursement checks only reflected these transactions. Again, the district court did not abuse its considerable discretion in determining that the travel receipts, expense reports, and reimbursement checks did not reflect an attorney's work product.

## B.

Halpern's next set of arguments focuses on what the district court did *not* do in reaching its decision. First, Halpern says the district court failed to diligently consider the relationship between the § 1782 action and the *Collins* and *Reid* cases pending in the Eastern District of Missouri. Next, Halpern claims the district court erred when it did not make an individualized determination for each entry in the Careaga Log and instead applied an "all-or-nothing" approach. Finally, Halpern argues the district court erred when it resolved the discovery dispute without holding a hearing, conducting an *in camera* review, or allowing Halpern to amend the Careaga Log. Again, these arguments confuse the applicable law and mischaracterize the district court's orders.

We begin with Halpern's claim that the district court did not adequately consider the relationship between the underlying § 1782 action and the *Collins* and *Reid* cases. In support, Halpern cites to *Glock v. Glock, Inc.*, 797 F.3d 1002 (11th Cir. 2015), where a panel of this Court opined on the potential for litigants to abuse § 1782 applications to obtain otherwise-privileged discovery. *Id.* at 1009. We do not agree that this *dicta* created an affirmative obligation on the district court to consider the *Collins* and *Reid* cases in resolving the underlying dispute.

Undoubtedly, the potential for forum shopping and abuse of the judicial process in § 1782 applications is a matter of considerable concern (as evidenced by these cases). But the structural risks do not absolve Halpern of bearing its evidentiary burden. Regardless, the magistrate judge *did* expressly address the impact of the *Collins* and *Reid* litigation, and *did* examine the potential abuse of the judicial process in its order, concluding "there is no conflict between the discovery sought in the Southern District of Florida and prior discovery orders issued in the Eastern District of Missouri."

Finally, Halpern claims the district court erred by not conducting a document-by-document review and by reaching its decision without holding a hearing, conducting an *in camera* examination, or affording leave to amend the Careaga Log. These claims rely on the same flawed premise -- that Halpern was entitled to additional court process despite having failed to carry its evidentiary burden.

Halpern also relies on our decision in *In re Grand Jury Subpoena*, which, it says, obliged the district court to engage in a document-by-document review and either to conduct an *in camera* review or hold a hearing. But the plain language of *In re Grand Jury Subpoena* makes clear that the burden still rests squarely on the asserting party to substantiate its claim of privilege with a document-by-document explanation. Only after that individualized showing has been made is the district court required to assess the validity of each claim, document-by-document "by either conducting a hearing or inspecting the documents *in camera*." 831 F.2d at 226; *see also United States v. Zolin*, 491 U.S. 554, 571–72 (1989) (recognizing district court discretion to employ *in camera* review once a sufficient showing is made).

Halpern has not met that threshold and was not entitled to any further review. In fact, to require a district court to perform an exhaustive, document-by-document examination by *in camera* review or to conduct a hearing whenever attorney-client privilege or work product protection is asserted -- regardless of whether the assertion has been supported in any way -- would improperly shift the burden from the party asserting the privilege to the trial court. The law requires no such transformation and placing this newfound burden on the trial court would be particularly unsustainable in the face of modern litigation, which often involves voluminous discovery.

Nor has the district court abused its discretion in denying Halpern leave to amend the Careaga Log. In the first place,

Halpern never moved the district court for leave to amend. More-over, Halpern was given ample notice of the deficiencies in the Log, which the magistrate judge characterized as "not in any way enable[ing] [the court] to make privilege rulings." Despite this plain warning, Halpern again submitted the same Log in support of its motion for protective order. Halpern claims that it should be entitled to amend the Log even when the failure inhered in Halpern's insufficient explanation for why it was entitled to invoke attorney-client privilege or work product protection. We can dis-cern no abuse of discretion.

**AFFIRMED.**